MARY PAPP, PLAINTIFF-RESPONDENT, v. THE GRAND LODGE OF THE ANCIENT ORDER OF UNITED WORK-MEN, A CORPORATION, DEFENDANT-APPELLANT.

Submitted October 25, 1935—Decided January 31, 1936.

For the appellant, *John C. Stockel* and *Edward I. Gaulkin.*

For the respondent, *David T. Wilentz.*

The opinion of the court was delivered by

HETFIELD, J. This is an appeal by the defendant below from a judgment rendered in the Supreme Court, Middlesex

Circuit, on a jury verdict for $1,100. Plaintiff was the beneficiary designated in an insurance policy dated July 28th, 1932, on the life of one Menyhert Battyanyi, issued by the defendant which was a fraternal beneficiary association. The insurance contract was solicited by Eugene Toffler and Louis B. Nagy, the former being the district agent for the defendant, and the latter president of the local lodge. The application for insurance was prepared in the presence of the insured, the beneficiary, Toffler and Nagy, at the home of the beneficiary, where the insured lived at the time, and all answers to the questions contained therein were inserted by Toffler. The insured signed the application by making his mark, and it provided that in the event of death, the insurance be paid to "Mary Papp," setting forth that her relationship to the insured was that of "cousin." It is admitted that the beneficiary was in no way related to the insured. After the death of the insured, which occurred April 21st, 1933, the beneficiary filed a proof of claim, which the insurer refused to honor by reason of the fraudulent misrepresentations made in the application, and it forwarded a check for $40 to the beneficiary, representing premiums paid on the policy during the insured's lifetime, which she refused to accept.

It appears that section 173 of the general laws of the order provided, in substance, that the person designated as the beneficiary in any insurance policy shall in every instance be one or more members of the family of the insured, or some person or persons related to or dependent upon such insured, or be an affianced wife or husband. It is not contended that the beneficiary came within any of these classifications.

The main issue litigated in the trial was the question of fraudulent misrepresentation made by the insured with respect to his relationship to the beneficiary.

The plaintiff testified that when the application was being prepared, the question of relationship was not mentioned; that the word "cousin" was inserted without the knowledge of either the insured or herself; that when the policy was delivered they noticed, for the first time, that she was referred to as a cousin of the insured, and Toffler and Nagy were then informed that no such relationship existed. She further tes-

tified: "Mr. Toffler and Mr. Nagy said we shouldn't worry about it. That is nothing. They could put that in there."

Toffler and Nagy both testified that all information contained in the application was supplied by the insured, in the presence of the beneficiary, and that neither of them was ever informed that the relationship, as set forth in the application and policy, was not the fact. It appears, however, that within a few days after the policy had been delivered, the insured executed a will, which was prepared in Nagy's office, and witnessed by him and Toffler, wherein he bequeathed to the plaintiff the entire proceeds of the policy now involved.

When the motion of the defendant to direct a verdict in its favor was denied, the trial court stated, in part: "I think a fact question has been raised as to whether or not such representations were made, or whether or not there was knowledge on behalf of the agents of the defendant of the conditions, as far as the relationship is concerned, existed, and I think that under *Howard* v. *Commonwealth Beneficial Association,* 98 *N. J. L.* 267, raises a fact question for the jury, as to whether or not this is so. For that reason, believing that a fact question exists, the motion to direct a verdict will be denied, with an exception to the defendant upon all of the reasons advanced by the defendant's counsel."

An examination of the insurance contract leads us to conclude that the defendant was entitled to a direction of a verdict, irrespective of the fact that there might have been sufficient evidence to warrant a finding that Toffler and Nagy had knowledge of the misrepresentation respecting the relationship.

The application provides, among other things, that it shall be a basis and part of the proposed contract for insurance, and that the contract of insurance shall not be in force until the applicant receives the Workman Degree. It also states:

"I further agree that this application, my application for membership, and the Medical Examination, together with the Articles of Incorporation, Constitution, General Laws and Rules of Order of the Grand Lodge now in effect or which may hereafter be enacted, shall be and form a part of my contract with the Grand Lodge and the delivery to and accept-

ance by me of the Contract of Insurance issued hereon shall be subject thereto."

The policy in question states, in part:

"This Contract of Insurance is issued and accepted upon the express condition that the said Insured Member shall in every particular comply with the Articles of Incorporation, Constitution, and General Laws of the Order as they now exist or may be hereafter modified or enacted; and upon the representations made in the application therefor, and the statements certified therein to the Medical Examiner; all of which are made a part of this Contract and shall together constitute the Contract between the Order and the Insured member, and shall bind the Beneficiary or Beneficiaries," and also that:

"No agent or representative of the Order can make, alter or discharge this Contract or extend the time for paying a premium due hereunder; nor can the Contract be varied or its conditions waived, altered or extended in any respect, except by the written agreement of the Order signed by its Grand Master Workman and Grand Recorder."

Section 6 of Article 9 of the Constitution reads as follows:

"No agent or representative of the Grand Lodge or other person is authorized to alter or change any of the provisions or conditions in the certificate or contract or this Constitution and Laws, or to waive any of the stipulations or conditions thereof."

There can be no question but that the insurance contract consisted of and included all the conditions and terms contained in the application, constitution, general laws and rules of the order, and the policy itself. This being so, the insured, who knew immediately upon delivery of the policy, that there had been a misrepresentation, should have known that the beneficiary was not eligible to receive any benefits from the policy, and that Toffler and Nagy, as representatives of the order, had no power or authority to waive, alter or change any of the provisions of the contract.

The statute relating to beneficial societies and associations (*Comp. Stat., p.* 196, § 7) provides:

"Said constitution and by-laws and all amendments thereto shall be binding upon all beneficiaries, and all persons claim-

ing any rights or duties from said associations by reason of the sickness or death of any member· or any other persou whether said beneficiary of claimant be a member of said association or 'not."

. Section 1; of an act relating to fraternal beneficiary associations, as amended by chapter 9, page 21, of the laws of 1932, provides:

"Any beneficiary member may direct any benefit to be paid to his estate, or to such person or persons, entity or interests, *as may be permitted by the laws of the society,* order or association governing beneficiaries."

The decided weight of authority is to the effect that persons entering mutual insurance companies are presumed to know the terms of the charter and by-laws under which they are organized and a condition contained in the insurance contract cannot be altered or waived by an agent unless he has express authority so to do and then only in the mode prescribed in the contract. *Belleville Mutual Insurance Co.* v. *Van Winkle,* 12 *N. J. Eq.* 333; *Kocher* v. *Supreme Council,* 65 *N. J. L.* 649. Chief Justice Magie, speaking for this court, in *Golden Star Fraternity* v. *Martin,* 59 *Id.* 207, stated: "The contract between the association and its beneficiary members is to be discovered in such a case from the beneficiary certificate to be issued to the member, read with the rules and by-laws of the association and the statute from which it obtained its corporate powers. The contract, when discovered, is to be construed and given force and effect as other contracts upon a similar subject."

The case of *Howard* v. *Commonwealth Beneficial Association,* 98 *N. J. L.* 267, cited by the trial court, and relied upon by the beneficiary to support her contention that knowledge on the part of the agents constituted a waiver by the insurer, can be clearly distinguished from the present situation. In that case, the by-law read: "No application will be received for membership herein when said applicant shall name as recipient of the funeral benefit applied for in such application any person other than a member of his or her family, or. one who is dependent upon him or her." The application designated the beneficiary as "dependent friend" and the

insurer refused to pay the benefit because such was not the fact. This court adopted a *per curiam* opinion of the Supreme Court which construed the by-law to mean that an application would not be received where the beneficiary was not a dependent, and held, in effect, that where the application had been received and accepted, the association waived the by-law, and was estopped from setting it up as a defense to the payment of the policy. The present insurance contract contained no such provision, but does provide, in definite terms, that no member has the power to appoint a beneficiary outside of the classes fixed by the laws of the order, and expressly contains a restriction to the effect that no representative can change, alter or waive any of the terms of the contract. Payment of benefits to persons not within the classifications fixed by the insurance contract would be contrary to the objects for which the order was formed, and not within its agreements to pay benefits, as one of its expressly declared objects, as indicated by the record, reads: "To pledge the members to a payment of a stipulated sum to such beneficiaries as a deceased member may have designated, while living, *under such restrictions and upon such conditions as the laws of the order may prescribe.*" Therefore, an attempt to designate a person who was outside of the fixed classifications, has no validity; and where the contract expressly contains restrictions as to the authority of representatives of the order, to permit the provisions of the contract to be ignored and over-ridden by the unauthorized acts of a subordinate agent, would in effect deny to the insurer the right to contract upon terms of its own selection. *Shyowitz* v. *Union Indemnity Co.,* 104 *N. J. L.* 339.

The judgment under review will be reversed.

*For affirmance*—HEHER, PERSKIE, WELLS, WOLFSKEIL, RAFFERTY, JJ. 5.

*For reversal*—THE CHANCELLOR, CHIEF JUSTICE, LLOYD, CASE, BODINE, DONGES, HETFIELD, DEAR, JJ. 8.